**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON**

FILED

JUL I 0 2019

RORY L. PERRY II, CLERK
U.S. District Court
Southern District of West Virginia

UNITED STATES OF AMERICA,

   Plaintiff,

v.           Civil Action No.  2:19-cv-00506

INTEGRATED COMMUNITY SERVICES
OF PARKERSBURG, INC., formerly known
as Worthington Mental Health Services, Inc.,
and ROGER BRADLEY,

   Defendants.

## COMPLAINT

 Plaintiff, the UNITED STATES OF AMERICA ("United States"), by and through

undersigned counsel, hereby alleges as follows:

## INTRODUCTION

 1. This action arises from the transfer of real property located at 4200 Emerson Avenue,

in Parkersburg, West Virginia "the Property"), from the United States to Integrated Community

Services of Parkersburg, Inc. (formerly known as Worthington Mental Health Services, Inc.) ("ICS").

The United States transferred the Property to ICS for a period of thirty (30) years upon the condition

that the Property would be used continuously for health purposes in accordance with ICS's approved

program of utilization as set forth in its application dated October 13, 2005, and amended November

15 and December 28, 2005, and for no other purpose.  Those health purposes included care for the

homeless.  ICS breached these conditions, entitling the United States to full possession of the

Property.  Accordingly, the United States brings this action seeking relief.

## JURISDICTION AND VENUE

 2. This Court has jurisdiction pursuant to 28 U.S.C. § 1345 because the United States is

the Plaintiff and 28 U.S.C. § 2201 because this action seeks a Declaratory Judgment.

3.     Venue lies in this district pursuant to 28 U.S.C. § I39l(b)(l) because the Defendant resides in this district and pursuant to 28 U.S.C. § 139l(b)(2) because the Property at issue is located within this  district.

## THE PARTIES

4.     Plaintiff is the United States.

5.     Defendant ICS is a 26 U.S.C. § 50l(c)(3) charitable organization incorporated as a West Virginia non-profit corporation with the address of its principal place of business listed as 4200 Emerson Avenue, Parkersburg, West Virginia 26104.  ICS was organized to, among other purposes, address the continued need for Health Care and Social Assistance - Social Assistance - Individual and Family Services (child, youth, elderly, disabled) in Parkersburg, West Virginia.

6.     Roger Bradley is the President of ICS.

## GENERAL ALLEGATIONS

7.     The General Services Administration ("GSA") is an agency of the United States that provides federal agencies with workplaces, goods, and  services.

8.     The United States Department of Health and Human Services ("HHS") is a federal agency with the mission of protecting the health of all Americans and providing essential human services.

9.     Prior to February 9, 2006, the United States, through the GSA, owned property identified as the Army Reserve Center, 4200 Emerson Avenue in Parkersburg, Wood County, West Virginia (the "Property"). The property located at 4200 Emerson Avenue, Parkersburg, West Virginia, consists of 3.4 acres of land improved with a 28,820 building and detached garage.

2

10.     On or about March 23, 2006, the United States of America, through HHS, transferred the Property to Worthington Mental Health Services, Inc., by Quitclaim Deed ("Deed"). Worthington Mental Health Services, Inc. ("WMHS"), subsequently changed its name to Integrated Community Services of Parkersburg, Inc. ("ICS"), and became successor to WMHS and succeeded to WMHS's interest in the Property.

11.     The Deed was recorded in the Wood County, West Virginia, Clerk's Office at Book 1094 and Page 566. A true and accurate copy of the Deed is attached hereto as Exhibit A.

12.     The Property is more particularly described in the Deed as:

> Tract No. A-100 consisting of 3.40 acres fee was acquired from Robert W. and Charles R. Ingram on 10 January 1957, and recorded among the land records of Wood County, West Virginia, in Book 406 of Deeds at page 259 (File No. 33-50-134-1).

Exhibit A at p. 1.

13.     HHS transferred the Property to WMHS through the Federal Property and Administrative Services Act of 1949, 40 U.S.C. § 550, and regulations promulgated pursuant thereto at 45 C.F.R. Part 12, which, among other provisions, allows the transfer of property owned by the United States for the protection of public health, and the McKinney-Vento Homeless Assistance Act, 42 U.S.C. § 11411, and regulations promulgated pursuant thereto at 45 C.F.R. Part 12a, which, among other provisions, allows the use of public buildings and real property to assist the homeless.

14.     The Deed provides that the Property was subject to each of the following conditions subsequent, among others:

> 1.     That for a period of thirty (30) years from the date hereof the Property herein conveyed will be used continuously for health purposes in accordance with Grantee's approved program of utilization as set forth in its application dated October 13, 2005, and

amended November 15 and December 28, 2005, and for no other purpose;

2.    That during the aforesaid period of thirty (30) years Grantee will not resell, lease, mortgage, or encumber or otherwise dispose of any part of the Property or interest therein except as Grantor or its successor in function may authorize in writing;

3.    Where construction or major renovation is not required or proposed, the Property must be placed into use within twelve (12) months from the date of this Deed: Where construction or major renovation is contemplated at the time of transfer, the Property must be placed into use within thirty-six (36) months from the date of this Deed;

4.    That one year from the date hereof and annually thereafter for the aforesaid period of thirty (30) years, unless Grantor or its successor in function directs otherwise, Grantee will file with Grantor or its successor in function reports on the operation and maintenance of the Property and will furnish, as requested, such other pertinent data evidencing continuous use of the Property for the purposes specified in the above-identified application;

5.    That during the aforesaid period of thirty (30) years Grantee will at all times be and remain a tax-supported organization or a nonprofit institution, organization, or association exempt from taxation under section 501(c)(3) of the Internal Revenue Code of 1986, as amended; and

6.    That, for the period during which the Property is used for the purpose for which the Federal assistance is hereby extended by Grantor or for another purpose involving the provision of similar services or benefits, Grantee hereby agrees that it will comply with the requirements of section 606 of the Act (40 U.S.C. § 476); the Fair Housing Act (42 U.S.C. § 3601-19) and implementing regulations; and, as applicable, Executive Order 11063 (Equal Opportunity in Housing) and implementing regulations; Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d to d-4) (Nondiscrimination in Federally Assisted Programs) and implementing regulations; Title IX of the Education Amendments of 1972 (20 U.S.C. § 1681) and implementing regulations; the prohibitions against discrimination on the basis of age under the Age Discrimination Act of 1975 (42 U.S.C. § 6101-07) and implementing regulations; the prohibitions against otherwise qualified individuals with handicaps under Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794) and implementing regulations, and all requirements imposed by or pursuant to the regulations of Grantor (45 CFR Parts 12, 80, 84, 86 and 91) issued pursuant to said Acts and now in effect, to the end that, in accordance with said Acts and regulations, no person in the United States shall, on the ground of race, color, national origin, sex, age, or handicap, be excluded from participation

4

in, be denied the benefits of, or otherwise be subjected to discrimination under the program and plan referred to in condition numbered 1 above or under any other program or activity of Grantee, its successors or assigns, to which said Acts and regulations apply by reason of this conveyance.

Exhibit A at pp. 2-3.

15.     The "approved program of utilization as set forth in its application dated October 13, 2005, and amended November 15 and December 28, 2005," provided that the property to be continually used for the approved program – homeless assistance supportive services, including drop-in center, case management, mental health and substance abuse program, etc. – for a period of 30 years.  Under the terms of the Deed, ICS was subject to all of the conditions, covenants, and other requirements contained in the Deed when it became the successor to WMHS.

16.     During a site visit in 2011, HHS noted that while ICS was operating a program on-site, the property itself was underutilized.  HHS continued to work with the ICS to put the entire property into full use for homeless assistance purposes.  In January 2017, with HHS' approval, ICS leased a portion of the property to Recovery Point of Parkersburg ("RPP") to be used as a non-medical, in-house, detox treatment facility for those suffering from homelessness and substance abuse disorders.

17.     Beginning in June 2018, HHS sent ICS via email, notice that it was delinquent in submitting the required CY2017 Annual Utilization Report (AURs).  Per the Deed, AURs are required to be submitted each year evidencing continued utilization of the property.  HHS was unsuccessful after multiple attempts to reach ICS by telephone and email to collect the required report.

18.     In October 2018, HHS attempted to notify ICS, again by email and telephone, that HHS would be conducting a site inspection of the property.  After unsuccessful attempts at reaching ICS, HHS contacted RPP, grantee's lessee, to seek information regarding use of the property and point-of-contact information for Mr. Roger Bradley, Executive Director, of ICS.  RPP provided

5

information HHS already had on file for the grantee and advised that it had been weeks since they have seen or been able to reach Mr. Bradley.  They advised that they made rental payments by texting Mr. Bradley when a payment is ready and that he came to pick-up the check – last being at the end of September 2018.  A site visit inspection was scheduled and confirmed with RPP for October 29, 2018.

19.     HHS conducted a site inspection on October 29, 2018.  While RPP is fully operating its program on the portion of the property it is leasing from the grantee, the portion to be utilized by grantee was vacant and appeared to be for some time.  RPP advised that October's rental check was picked up by Mr. Bradley's "friend."  Following the site visit, HHS tried to contact Mr. Bradley on his cell phone number provided by Mr. Fulks of RPP.  HHS was unable to reach Mr. Bradley, and Mr. Bradley did not return calls placed to his telephone number by HHS.  HHS notified RPP to hold all future rental checks for the benefit of the Federal government while this matter was being investigated.

20.     HHS also subsequently learned that ICS had rented or leased a portion of the Property to another entity to allow it to store equipment on the property.  That action was without permission of HHS and in violation of the terms and conditions contained in the Deed.

21.     ICS has violated Paragraphs 1 through 6 of the Deed (Exhibit A at pp. 2-3).

22. The Deed further states that:

> In the event of a breach of any of the conditions subsequent set forth above, whether caused by the legal or other inability of [ICS], its successors and assigns, to perform any of the obligations herein set forth, [HHS] or its successor in function will, at its option, have an immediate right of reentry thereon, and to cause all right, title, and interest in and to the Property to revert to the United States of America, and [ICS], its successors and assigns, shall forfeit all right, title, and interest in and to the Property and to any and all of the tenements, hereditaments, and appurtenances thereunto belonging;

Exhibit A at p. 3.

23.     The Deed further states that:

6

> PROVIDED, HOWEVER, that the failure of [HHS] or its successor in function to insist in any one or more instance upon complete performance of any of the said conditions subsequent shall not be construed as a waiver of or a relinquishment of the future performance of any of said conditions subsequent, but the obligations of [ICS] with respect to such future performance shall continue in full force and effect;

Exhibit A at p. 3.

24.    The Deed further states that:

> In the event title to the Property or any part thereof is reverted to the United States of America for noncompliance ... [ICS] ... shall be responsible for and shall be required to reimburse the United States of America for the decreased value thereof ... [and] ... [t]he United States of America shall ... be reimbursed for such damage, including such costs as may be incurred in recovering title to or possession of the above-described property, as it may sustain as a result of such noncompliance.

Exhibit A at p. 5.

25.    On June 13, 2018, HHS notified Roger Bradley, President of ICS that ICS had failed to submit its annual utilization report as required by the Deed and federal law.  Mr. Bradley and ICS were also notified that such non-compliance could result in a noncompliance action which might include reversion of the property to the federal government.  Neither Mr. Bradley nor ICS furnished the required annual utilization report as required by the Deed and federal law.

26.    HHS notified Mr. Bradley and ICS again on August 17, 2018, and September 12, 2018, of ICS's failure to submit its annual utilization report as required by the Deed and federal law.  Mr. Bradley and ICS were also notified that such non-compliance could result in a noncompliance action which might include reversion of the property to the federal government.  Neither Mr. Bradley nor ICS furnished the required annual utilization report as required by the Deed and federal law.

27.    On October 25, 2018, HHS notified Mr. Bradley and ICS by letter (attached as Exhibit B) that HHS had been informed that the Property was not being fully utilized for homeless assistance as required by the Deed and federal law.  Mr. Bradley and ICS were informed that they

7

needed to contact HHS immediately to avoid further administrative action which might include reversion of the property to the federal government.

28.     On April 18, 2019, Mr. Bradley and ICS were notified by letter (attached as Exhibit C) that ICS was in noncompliance with the terms of the Deed and federal law and that HHS was taking final administrative action to transfer the Property to another entity as permitted by the terms of the Deed and federal law.  HHS stated that it was exercising its rights under the Deed and federal law and requiring ICS to revert the property.  A quitclaim deed was included with the letter and ICS was directed to sign that quitclaim deed so that the property could be transferred.  This was a final administrative action by HHS.  Neither Mr. Bradley nor ICS responded to that letter or disputed that final administrative action.

29.     Neither Mr. Bradley nor ICS have provided the required quitclaim deed or provided the United States with possession of, or title to, the Property.

**COUNT I**
**(Reverter Because of Breach of Condition Subsequent)**

30.     The United States realleges and incorporates by reference paragraphs I through 29 of this Complaint as though fully set forth herein.

31.     By reason of the conduct described herein, and pursuant to the terms and condition of the Deed and federal law, the United States has an automatic right of reentry to the Property and Defendant ICS forfeited the Property to the United States of America.

32.     The conditions subsequent were created in the Deed for the benevolent, charitable, educational, and public purpose of ensuring that the Property would be developed promptly and restored to productive use by providing services to the homeless.

33.     The conditions subsequent were therefore created for benevolent, charitable, educational, or public purposes and restricts the use of land to carrying out such purpose.

34.     The United States has a substantial interest in enforcing the conditions subsequent contained in the Deed.

35.     Defendant ICS breached a condition subsequent contained in the Deed.

36.     The United States provided Defendant ICS with a written demand that possession of the Property be delivered to the United States, for violations of conditions subsequent contained in the Deed.

37.     Pursuant to the Deed, upon the breach of a condition subsequent, the United States has an immediate right of reentry and to take possession to the Property, and to cause all right, title, and interest in and to the Property to revert to the United States, and Defendant ICS, its successors and assigns, shall forfeit all right, title, and interest in and to the Property and to any and all of the tenements, hereditaments, and appurtenances thereunto belonging.

38.     The United States has the right to re-enter and take possession of the Property and to terminate Defendant ICS's interest in the Property.

39.     Title to the Premises revested in the United States by operation of law upon Defendant ICS's breach of the Deed conditions.

## COUNT II
### (Ejectment Because of Breach of Condition Subsequent)

40.     The United States realleges and incorporates by reference paragraphs I through 39 of this Complaint as though fully set forth herein.

41.     Defendant ICS breached a condition subsequent contained in the Deed.

42.     As a result of Defendant ICS's breach of a condition subsequent contained in the Deed, the United States is entitled to exclusive possession of the Property, and an order and judgment ejecting Defendant ICS from the Property and Defendant ICS shall retain no rights or interests in the Property.

## COUNT III
### (Costs Because of Breach of Condition Subsequent)

43.     The United States of America realleges and incorporates by reference paragraphs I through 42 of this Complaint as though fully set forth herein.

44.     Defendant ICS breached a condition subsequent contained in the Deed.

45.     The Property may have decreased in value since being transferred to Defendant ICS.

46.     The United States has and will incur costs, fees, and damages in connection with exercising its rights under the Deed.

47.     As a result of Defendant ICS's breach of a condition subsequent contained in the Deed, the United States is entitled to its fees, costs, and damages in an amount to be established.

## COUNT IV
### (Misappropriation of Funds and Breach of Condition Subsequent)

48.     The United States realleges and incorporates by reference paragraphs I through 47 of this Complaint as though fully set forth herein.

49.     Roger Bradley, both personally and as Executive Director of ICS, mishandled and collected various rental and other payments in contravention to the terms of the Deed and federal law regarding the program involving the Property.  In addition, he collected rents and other payments for using the Property in contravention of federal law.

50.     Under 45 C.F.R. § 12.19(c)(4), the terms of the Deed, and applicable federal law, in the event the Property is sold, leased or subleased, encumbered, disposed of, or is used for purposes other than those set forth in the approved plan without the consent of HHS, all revenues or the reasonable value of other benefits received by the transferee directly or indirectly from such use, as determined by HHS, will be considered to have been received and held in trust by the transferee for the account of the United States and will be subject to the direction and control of HHS.

10

51.     Roger Bradley has failed to turn over the improperly handled and collected rental and other payments to HHS and is in violation of the terms of the Deed and applicable federal law.

52.     The United States is entitled to those improperly handled and collected rental and other payments as a matter of federal law,

## PRAYER FOR RELIEF

WHEREFORE, plaintiff United States of America requests the following relief from the Court:

A.     An Order and Judgment declaring that the United States of America is vested with title to the Property, in tee simple free and clear of any liens, mortgages, or encumbrances;

B.     An Order and Judgment that the Clerk of Wood County, West Virginia, be directed to take such action to reflect that the United States of America is vested with absolute and unencumbered title, in fee simple to the Property;

C.     An Order and Judgment compelling Defendant ICS to convey the Property to the United States of America and to execute and deliver an unencumbered deed to the  Property to the United States of America;

D.     An Order and Judgment awarding the United States of America exclusive possession of the Property;

E.     An Order and Judgment ejecting Defendant ICS, and any other entity or person not authorized by HHS and/or the United States, from possession of the Property;

F.     An Order and Judgment awarding the costs and disbursements of this action;

G.     An Order compelling Roger Bradley to pay the United States all rental and other payments he collected or had collected on his behalf or on behalf of ICS in contravention to the terms of the Deed and federal law regarding the program involving the Property; and

H.     Such other and further relief as the Court shall deem proper and just.

11

Respectfully submitted.

**MICHAEL B. STUART**
**United States Attorney**

**s/Fred B. Westfall, Jr.**
WV State Bar No. 3992
Assistant United States Attorney
Attorney for United States
P.O. Box 1713
Charleston, WV 25326
Phone: 304-345-2200
Fax: 304-347-5443
E-mail: fred.westfall@usdoj.gov
Counsel for Plaintiff United States of
America

12

# EXHIBIT A

Contract No. 04-WV-2283

BOOK 1094 PG 566

## QUITCLAIM DEED

THIS INDENTURE, made this 23th day of March, 2006, between the United States of America, acting through the Secretary of Health and Human Services, by the Chief, Space Management Branch, Division of Property Management, Program Support Center, U.S. Department of Health and Human Services (hereinafter referred to as "Grantor"), under and pursuant to the power and authority delegated by the Federal Property and Administrative Services Act of 1949 (40 U.S.C. § 550), as amended (hereinafter referred to as "the Act"), and regulations promulgated pursuant thereto at 45 C.F.R. Part 12, and the McKinney-Vento Homeless Assistance Act (42 U.S.C. § 11411), as amended, and regulations promulgated thereto at 45 C.F.R. Part 12a, and Worthington Mental Health Services, Inc.(hereinafter referred to as "Grantee").

### WITNESSETH

WHEREAS, by letter dated February 9, 2006 and amended March 1, 2006, from the U.S. General Services Administration, certain surplus property consisting of 3.4 acres, more or less, improved with an approximately 28,820 rentable square foot building and a separate building known as the motor pool building, hereinafter described (hereinafter referred to as "the Property"), was assigned to the Department of Health and Human Services for disposal upon the recommendation of the Grantor that the Property is needed for public health purposes in accordance with the provisions of the Act; and

WHEREAS, said Grantee has made a firm offer to purchase the Property under the provisions of the Act, has made application for a public benefit allowance, and proposes to use the Property in accordance with the approved program of utilization dated October 13, 2005 and amended on November 15, 2005 and December 28, 2005; and

WHEREAS, Grantor has accepted the offer of the Grantee,

NOW, THEREFORE, Grantor, for and in consideration of the foregoing and of the observance and performance by Grantee of the covenants, considerations and restrictions hereinafter contained and other good and valuable consideration, the receipt of which is hereby acknowledged, has remised, released and quitclaimed and by these presents does remise, release and quitclaim to Grantee, its successors and assigns, all right, title, interest, claim and demand, excepting and reserving such rights as may arise from the operation of the conditions subsequent hereinafter expressed, which the United States of America has in and to the Property, situate, lying, and being in the County of Wood, City of Parkersburg, State of West Virginia, and more particularly described as follows:

Tract No. A-100 consisting of 3.40 acres fee was acquired from Robert W. and Charles R. Ingram on 10 January 1957, and recorded among the land records of Wood County, West Virginia, in Book 406 of Deeds at page 259 (File No. 33-50-134-1).

6063

APR 1 7 2006

3199 CORE ROAD
PARKERSBURG WV   26104



BOOK 1094 PG 567

SUBJECT to any and all other existing easements, encumbrances, covenants, restrictions, reservations or conditions affecting the above described property whether or not the same appear on record,

LESS AND EXCEPT all right, title, and interest in and to all oil, gas and coal in and under the above described land herein conveyed; and it is hereby expressly agreed and understood that the United States of America herein and its assigns shall have the right and power to enter on and upon said land or any part thereof for the purpose of prospecting, mining, or operating for oil, gas, or coal on, upon or under said land, and of working, preparing, getting, and removing said oil, gas, and coal from under and away from said land and premises by all usual, necessary, and convenient means. It is understood and agreed that the use of the surface in relation to the operations herein described shall be on a site mutually acceptable to the United States of America herein and its assigns and the Grantee, its successors in function and assigns, so that such operations will not interfere with the use of the surface by said Grantee, its successors and assigns, for health purposes in accordance with its application therefor dated October 13, 2005 and amended on November 15, 2005 and December 28, 2005 as little as practicable.

Grantee shall comply with all applicable Federal, State, municipal, and local laws, rules, orders, ordinances, and regulations in the occupation, use, and operation of the Property.

TO HAVE AND TO HOLD the Property subject, however, to each of the following conditions subsequent, which shall be binding upon and enforceable against Grantee, its successors and assigns, as follows:

1.   That for a period of thirty (30) years from the date hereof the Property herein conveyed will be used continuously for health purposes in accordance with Grantee's approved program of utilization as set forth in its application dated October 13, 2005, and amended November 15 and December 28, 2005, and for no other purpose;

2.   That during the aforesaid period of thirty (30) years Grantee will not resell, lease, mortgage, or encumber or otherwise dispose of any part of the Property or interest therein except as Grantor or its successor in function may authorize in writing;

3.   Where construction or major renovation is not required or proposed, the Property must be placed into use within twelve (12) months from the date of this Deed. Where construction or major renovation is contemplated at the time of transfer, the Property must be placed into use within thirty-six (36) months from the date of this Deed;

4.   That one year from the date hereof and annually thereafter for the aforesaid period of thirty (30) years, unless Grantor or its successor in function directs otherwise, Grantee will file with Grantor or its successor in function reports on the operation and maintenance of the Property and will furnish, as requested, such other pertinent

2

BOOK 1094 PG 568

data evidencing continuous use of the Property for the purposes specified in the above-identified application;

5.    That during the aforesaid period of thirty (30) years Grantee will at all times be and remain a tax-supported organization or a nonprofit institution, organization, or association exempt from taxation under section 501(c)(3) of the Internal Revenue Code of 1986, as amended; and

6.    That, for the period during which the Property is used for the purpose for which the Federal assistance is hereby extended by Grantor or for another purpose involving the provision of similar services or benefits, Grantee hereby agrees that it will comply with the requirements of section 606 of the Act (40 U.S.C. § 476); the Fair Housing Act (42 U.S.C. § 3601-19) and implementing regulations; and, as applicable, Executive Order 11063 (Equal Opportunity in Housing) and implementing regulations;  Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d to d-4) (Nondiscrimination in Federally Assisted Programs) and implementing regulations; Title IX of the Education Amendments of 1972 (20 U.S.C. § 1681) and implementing regulations; the prohibitions against discrimination on the basis of age under the Age Discrimination Act of 1975 (42 U.S.C. § 6101-07) and implementing regulations; the prohibitions against otherwise qualified individuals with handicaps under Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794) and implementing regulations, and all requirements imposed by or pursuant to the regulations of Grantor (45 CFR Parts 12, 80, 84, 86 and 91) issued pursuant to said Acts and now in effect, to the end that, in accordance with said Acts and regulations, no person in the United States shall, on the ground of race, color, national origin, sex, age, or handicap, be excluded from participation in, be denied the benefits of, or otherwise be subjected to discrimination under the program and plan referred to in condition numbered 1 above or under any other program or activity of Grantee, its successors or assigns, to which said Acts and regulations apply by reason of this conveyance.

In the event of a breach of any of the conditions subsequent set forth above, whether caused by the legal or other inability of Grantee, its successors and assigns, to perform any of the obligations herein set forth, Grantor or its successor in function will, at its option, have an immediate right of reentry thereon, and to cause all right, title, and interest in and to the Property to revert to the United States of America, and Grantee, its successors and assigns, shall forfeit all right, title, and interest in and to the Property and to any and all of the tenements, hereditaments, and appurtenances thereunto belonging;

PROVIDED, HOWEVER, that the failure of Grantor or its successor in function to insist in any one or more instance upon complete performance of any of the said conditions subsequent shall not be construed as a waiver of or a relinquishment of the future performance of any of said conditions subsequent, but the obligations of Grantee with respect to such future performance shall continue in full force and effect;

3

BOOK 1094 PG 569

PROVIDED FURTHER, that, in the event Grantor or its successor in function fails to exercise its option to reenter the premises and to revert title thereto for any such breach of conditions numbered 1, 2, 3, 4, or 5 herein within thirty-one (31) years from the date of this conveyance, conditions numbered 1, 2, 3, 4, and 5 herein, together with all rights to reenter and revert title for breach of condition, will, as of that date, terminate and be extinguished; and

PROVIDED FURTHER, that the expiration of conditions numbered 1, 2, 3, 4, and 5 and the right to reenter and revert title for breach thereof, will not affect the obligation of Grantee, its successors and assigns, with respect to condition numbered 6 herein or the right reserved to Grantor, or its successor in function, to reenter and revert title for breach of condition numbered 6.

Grantee may secure abrogation of the conditions subsequent numbered 1, 2, 3, 4, and 5 herein by:

a.    Obtaining the consent of Grantor, or its successor in function, therefor; and

b.    Payment to the United States of America of 1/360th of the percentage public benefit allowance granted of the fair market value as of the date of such requested abrogation, exclusive of the value of improvements made by Grantee to the extent that they add to the value of that portion of the Property to be released, for each month of the period to be abrogated.

Grantee, by acceptance of this Deed, covenants and agrees for itself, its successors and assigns, with respect to the Property or any part thereof--which covenant shall attach to and run with the land for so long as the Property is used for a purpose for which Federal assistance is hereby extended by Grantor or for another purpose involving the provision of similar services or benefits, and which covenant shall in any event, and without regard to technical classification or designation, legal or otherwise, be binding to the fullest extent permitted by law and equity, for the benefit of and in favor of and enforceable by Grantor or its successor in function against Grantee, its successors and assigns for the Property, or any part thereof--that it will comply with the requirements of section 606 of the Act (40 U.S.C. § 476); the Fair Housing Act (42 U.S.C. § 3601-19) and implementing regulations; Executive Order 11063 (Equal Opportunity in Housing) and implementing regulations; Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d to d-4) (Nondiscrimination in Federally Assisted Programs) and implementing regulations; the prohibitions against discrimination on the basis of age under the Age Discrimination Act of 1975 (42 U.S.C. § 6101-07) and implementing regulations; and the prohibitions against otherwise qualified individuals with handicaps under Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794) and implementing regulations; and all requirements imposed by or pursuant to the regulations of Grantor (45 CFR Parts 12, 80, 84 and 91) issued pursuant to said acts and now in effect, to the end that, in accordance with said acts and regulations, no person in the United States shall, on the ground of race, color, national origin, sex, age, or handicap, be excluded from participation in, be denied the benefits of, or otherwise be subjected to discrimination under the program and plan referred to in condition numbered 1 above or under any other program or activity of Grantee, its successors or assigns, to which such Acts and regulations apply by reason of this conveyance.

BOOK 1094 PG 570

Grantee covenants and agrees that the Property will be used for secular purposes, with no more than a de minimis level of other activity.

Grantee, by acceptance of this Deed, covenants and agrees for itself, its successors and assigns, that in the event Grantor exercises its option to revert all right, title, and interest in and to the Property to Grantor, or Grantee voluntarily returns title to the Property in lieu of a reverter, then Grantee shall provide protection to and maintenance of the Property at all times until such time as the title is actually reverted or returned to and accepted by Grantor. Such protection and maintenance shall, at a minimum, conform to the standards prescribed by the General Services Administration and codified in the Federal Property Management Regulations at 41 C.F.R. Subpart 101-47.4913 now in effect, a copy of which is attached to Grantee's aforementioned application.

In the event title to the Property or any part thereof is reverted to the United States of America for noncompliance or is voluntarily reconveyed in lieu of reverter, Grantee, its successors or assigns, at the option of Grantor, or its successor in function, shall be responsible for and shall be required to reimburse the United States of America for the decreased value thereof that is not the result of reasonable wear and tear, an act of God, or alterations and conversions made by Grantee, its successors or assigns, to adapt the property to the health use for which the property was transferred. The United States of America shall, in addition thereto, be reimbursed for such damage, including such costs as may be incurred in recovering title to or possession of the above-described property, as it may sustain as a result of such noncompliance.

Grantee, by acceptance of this deed, further covenants and agrees for itself, its successors and assigns, that in the event the Property or any part thereof is, at any time within the period of thirty (30) years from the date of this conveyance, sold, leased, disposed of, or used for purposes other than those designated in condition numbered 1 above without the consent of Grantor, or its successor in function, all revenues therefrom or the reasonable value, as determined by Grantor, or its successor in function, of benefits to Grantee, deriving directly or indirectly from such sale, lease, disposal, or use, shall be considered to have been received and held in trust by Grantee for the United States of America and shall be subject to the direction and control of Grantor, or its successor in function; but the provisions of this paragraph shall not impair or affect the rights reserved to Grantor under any other provision of this deed.

Grantee, by acceptance of this Deed, covenants and agrees for itself, its successors and assigns, that the Property is transferred on an "as is, where is," basis, without warranty of any kind, either expressed or implied, including as to the condition of the Property. Grantee also covenants and agrees for itself, its successors and assigns, that Grantor has no obligation to provide any additions, improvements, or alterations to the Property.

Grantor, in its capacity as a public benefit conveyance authority for the United States of America, does not assume liability, custody, or accountability for the property in the event title to the Property reverts to the United States of America for noncompliance with this Deed, or in connection with any hazardous substance activity or condition on the Property.

5

BOOK 1094 PG 571

*The following covenants and restrictions are provided pursuant to the aforementioned letters of assignment from the General Services Administration, Region IV.*

## CERCLA COVENANT

(A)    NOTICE Regarding Hazardous Substance Activity. Pursuant to 40 CFR 373.2 and Section 120(h)(3)(A)(i) of the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended (CERCLA) (42 U.S.C. §9620(h)(3)(A)(i)), and based upon a complete search of agency files, the United States gives notice that no hazardous substances have been release or disposed of or stored for one year or more on the Property.

(B)    CERCLA Covenant. The United States of America warrants that all remedial action necessary to protect human health and the environment has been taken before the date of this conveyance. The United States of America warrants that it shall take any additional response action found to be necessary after the date of this conveyance regarding hazardous substances located on the Property on the date of this conveyance.

 (1)    This covenant shall not apply:

   (a)    in any case in which Grantee, its successor(s) or assign(s), or any successor in interest to the Property or part thereof is a Potentially Responsible Party (PRP) with respect to the Property immediately prior to the date of this conveyance;  OR

   (b)    to the extent that such additional response action or part thereof found to be necessary is the result of an act or failure to act of the Grantee, its successor(s) or assign(s), or any party in possession after the date of this conveyance that either:

     (i)    results in a release or threatened release of a hazardous substance that was not located on the Property on the date of this conveyance;  OR

     (ii)    causes or exacerbates the release or threatened release of a hazardous substance, the existence and location of which was known and identified to the applicable regulatory authority as of the date of this conveyance.

 (2)    In the event Grantee, its successor(s) or assign(s), seeks to have United States of America conduct any additional response action, and, as a condition precedent to United States of America incurring any additional cleanup obligation or related expenses, the Grantee, its successor(s) or assign(s), shall provide the United States of America at least 45 days written notice of such a claim. In order for the 45-day period to commence, such notice must include credible evidence that:

BOOK 1094 PG 572

(a) the associated contamination existed prior to the date of this conveyance; and

(b) the need to conduct any additional response action or part thereof was not the result of any act or failure to act by the Grantee, its successor(s) or assign(s), or any party in possession.

(C)    ACCESS. The United States of America reserves a right of access to all portions of the Property for environmental investigation, remediation or other corrective action. This reservation includes the right of access to and use of available utilities at reasonable cost to the United States of America. These rights shall be exercisable in any case in which a remedial action, response action or corrective action is found to be necessary after the date of this conveyance, or in which access is necessary to carry out a remedial action, response action, or corrective action on adjoining property. Pursuant to this reservation, the United States of America, and its respective officers, agents, employees, contractors and subcontractors shall have the right (upon reasonable advance written notice to the record title owner) to enter upon the Property and conduct investigations and surveys, to include drilling, test-pitting, borings, data and records compilation and other activities related to environmental investigation, and to carry out remedial or removal actions as required or necessary, including but not limited to the installation and operation of monitoring wells, pumping wells, and treatment facilities. Any such entry, including such activities, responses or remedial actions, shall be coordinated with record title owner and shall be performed in a manner that minimizes interruption with activities or authorized occupants.

## NOTICE OF THE PRESENCE OF ASBESTOS

The Grantee is warned that the Property contains asbestos-containing materials, notably in pipe insulation and some flooring. Unprotected or unregulated exposures to asbestos in product manufacturing, shipyard, and building construction workplaces have been associated with asbestos-related diseases. Both the Occupational Safety and Health Administration (OSHA) and the Environmental Protection Agency (EPA) regulate asbestos because of the potential hazards associated with exposure to airborne asbestos fibers. Both OSHA and EPA have determined that such exposure increases the risk of asbestos-related diseases, which include certain cancers and which can result in disability or death.

Grantee is invited, urged and cautioned to inspect the Property as to its asbestos content and condition and any hazardous or environmental conditions relating thereto. The disposal agency will assist Grantee in obtaining any authorization(s) which may be required in order to carry out any such inspection(s). Grantee shall be deemed to have relied solely on their own judgment in assessing the overall condition of all or any portion of the Property including, without limitation, any asbestos hazards or concerns.

No warranties either express or implied are given with regard to the condition of the Property including, without limitation, whether the Property does or does not contain asbestos or is or is not safe for a particular purpose.

7

BOOK 1094 PG 57

The description of the Property set forth in the Quitclaim Deed and any other information provided therein with respect to said Property is based on the best information available to the disposal agency and is believed to be correct, but any error or omission, including but not limited to the omission of any information available to the agency having custody over the Property and/or any other Federal agency, shall not constitute grounds for any claim by the Grantee against the Government.

The Government assumes no liability for damages for personal injury, illness, disability or death, to the Grantee, or to the Grantee's successors, assigns, employees, invitees, or any other person subject to Grantee's control or direction, or to any other person, including members of the general public, arising from or incident to the purchase, transportation, removal, handling, use, disposition, or other activity causing or leading to contact of any kind whatsoever with asbestos on the Property which is subject of this conveyance, whether the Grantee, its successors or assigns has or have properly warned or failed properly to warn the individuals(s) injured.

The Grantee further agrees that in its use and occupancy of the Property it will comply with all Federal, state, and local laws relating to asbestos.

### NOTICE OF THE PRESENCE OF LEAD-BASED PAINT

Grantee hereby acknowledges the required disclosure in accordance with the Residential Lead-Based Paint Hazard Reduction Act of 1992, 42 U.S.C. 4852d (Title X), of the presence of any known lead-based paint and/or lead-based paint hazards in target housing constructed prior to 1978 on the Property. This disclosure includes the receipt of available records and reports, namely the Environmental Baseline Survey prepared by Foster Wheeler Environmental Corporation, December 2004, and the Finding of Suitability to Transfer, March, 2004; receipt of the lead hazard information pamphlet; and inclusion of the 24 C.F.R. 35 and 40 C.F.R. 745 disclosure and lead warning language in its contract of conveyance. Grantee further acknowledges that Grantee was given the opportunity to inspect, and thereby assess, the Property for lead-based paint hazards.

Grantee covenants and agrees that, with respect to any improvements on the Property constructed prior to 1978, lead-based paint hazards will be disclosed to potential occupants in accordance with Title X before any use of such improvements as a residential dwelling.

Grantee further covenants that, <u>before any use of the Property as a residential dwelling</u>, GRANTEE will abate, at Grantee's own cost, all lead hazards in accordance with 40 C.F.R. 745.227(e) and other applicable laws and regulations, prior to the occupancy of any residential structures on the Property. Following the abatement, Grantee shall obtain a clearance examination, in accordance with 40 C.F.R. 745.227(e) and 24 C.F.R. 35.1340(c) through (f), and conducted by a person certified to perform risk assessments or lead-based paint inspections. The examination must show that the clearance samples meet the standards set forth in 24 C.F.R. 35.1320(b)(2). Grantee must obtain a clearance report, prepared by a person certified to perform risk assessments or lead-based paint inspections and in accordance with 40 C.F.R. 745.227(e)(10). Prior to occupancy of the Property, Grantee shall provide Grantor with a fully executed CERTIFICATION OF COMPLETION OF LEAD ABATEMENT.

8

BOOK 1094 PG 574

      Grantee covenants and agrees that in its use and occupancy of the Property it will comply with 24 C.F.R. 35 and 40 C.F.R. 745 and all applicable Federal, State and local laws relating to lead-based paint; and that Grantor assumes no liability for damages for property damage, personal injury, illness, disability, or death, to Grantee, its successors or assigns, or to any other person, including members of the general public, arising from or incident to the purchase, transportation, removal, handling, use disposition, or other activity causing or leading to contact of any kind whatsoever with lead-based paint on the Property described in this Deed, whether Grantee, and its successors or assigns, have properly warned or failed properly to warn the individual(s) injured. Grantee further agrees to indemnify, defend and hold harmless Grantor, to the extent permitted by state law, from any and all loss, judgment, claims, demands, expenses or damages, of whatever nature which might arise or be made against the United States of America, due to, or relating to the presence of lead-based paint hazard on the Property, any related abatement activities, or the disposal of any material from the abatement process.

      Grantee covenants and agrees that it will comply with all Federal, State, local, and any other applicable law regarding the lead-based paint hazards with respect to the Property.

      Grantee covenants and agrees that if this building is demolished and any document box is found, which should be located behind the cornerstone, it shall remain the property of the U.S. Government and shall be delivered, unopened, to the National Archives and Records Administration, Washington, D.C.

      IN WITNESS WHEREOF, Grantor has caused this instrument to be executed as of the day and year first above written.

                        UNITED STATES OF AMERICA
                        Acting through the Secretary of Health and Human Services

                        By: _____
                        John G. Hicks, Chief, Space Management Branch
                        Division of Property Management
                        Program Support Center

BOOK **1094** PG 575

ACKNOWLEDGMENT

STATE OF MARYLAND     )
COUNTY OF MONTGOMERY ) SS

On this 23[th] day of March 2006, before me the undersigned officer, personally appeared John G. Hicks, known to me to be the Chief, Space Management Branch, Division of Property Management, Department of Health and Human Services, and known to me to be the person who executed the foregoing instrument on behalf of the Secretary of Health and Human Services, for the United States of America, and acknowledged to me that he subscribed to the said instrument in the name of the Secretary of Health and Human Services and on behalf of the United States of America.

Witness my hand and official seal.

(SEAL)

_Paula M. Samuel_
Notary Public

My commission expires    _March 1, 2007_

Under penalties of fine and imprisonment as provided by law, I hereby declare:

The total consideration paid for the property conveyed, and, or the true and actual value of the property transferred, by the document to which this declaration is appended is, to the best of my knowledge and belief
$ _0_ .

Given under my hand this _29_ day of _March_, 20_06_.
Signature _Kathy Matlack_
Grantor, Grantee, or Agent
Address _3199 Cole Rd Parkersburg WV 26104_

10

BOOK **1094** PG **576**

## ACCEPTANCE

Worthington Mental Health Services, Inc. hereby accepts this deed and thereby agrees to all the terms, covenants, conditions and restrictions contained therein.

By _Teresa Tracy Wilson_
Teresa Tracy Wilson

## ACKNOWLEDGMENT

STATE OF West Virginia  )
COUNTY OF            ) SS

On this      day of         , 2006, before me, a Notary Public in and for the City of          , County of         , State of West Virginia, personally appeared Teresa Tracy Wilson, known to me to be the President, Worthington Mental Health Services, Inc., and known to me to be the person who executed the foregoing instrument on behalf of Worthington Mental Health Services, Inc., and acknowledged to me that she executed the same as the free act and deed of Worthington Mental Health Services, Inc.

Witness my hand and official seal.

(SEAL)  _Shirley Malone_
Notary Public

My commission expires _Aug 17, 2008_



**OFFICIAL SEAL**
**NOTARY PUBLIC**
**STATE OF WEST VIRGINIA**
**SHIRLEY MALONE**
Route 3, Box 504-A
St. Marys, West Virginia 26170
My Commission Expires Aug. 17, 2008

WOOD COUNTY COMMISSION
QUIT CLAIM DEED CLERK 03
Date/Time: 05/29/2006  10:43
Inst #:      494450
Book/Page:   1094 / 566-
Recd/Tax:    18.00     .00

11

## CERTIFICATE OF RECORDATION

I, _Kristi Williams_ , of the Office of the County Recorder of the

County of _Wood_ State of _WV_ , did receive

on the _29th_ day of _March_ , _2006_ , for filing and recordation, the

following instrument:

_Quit Claim Deed to Worthington
Mental Health Services, Inc._

I further certify that the same has been recorded in Book _1094_ , at Page

_566_ , of the Official Records of the said County.

_Kristi L Williams_
(Signature)

_Deputy Clerk_
(Title)

Attachment C

## CERTIFICATE OF COMPLETION OF LEAD ABATEMENT

Property Name and Location: *Army Reserve Center  4-0-WV-550* ("Property")
*Parkersburg WV*

Name and Address of Grantee: *Worthington Mental Health Services Inc.* ("Grantee")
*3199 Core Rd*
*Parkersburg, WV 26104*

Mark appropriate boxes with an "X".

__X__   Grantee certifies that lead hazards were abated and that the following statements are true:

    1.  All lead-based paint hazards were abated from the Property in accordance with 40 CFR 745.227(e) and other applicable laws and regulations prior to the occupancy of any residential improvements.

    2.  No more than 12 months elapsed from the date on the Government's risk assessment to the time when onsite preparation activities for the abatement commenced, or the risk assessment was made current by the Grantee prior to the commencement of such activities, at no cost to the Government.

    3.  A clearance examination was performed in accordance with 40 CFR 745.227(e) and 24 CFR 35.1340 (c) through (f), by a person certified to perform risk assessments or lead-based paint inspections.  The examination reveals that clearance samples meet the standards set forth in 24 CFR 35.1320(b)(2).

    4.  A true and correct copy of the clearance report, prepared by a person certified to perform risk assessments or lead-based paint inspections and in accordance with 40 CFR 745.227(e)(10), is attached.

_____  Grantee hereby certifies that the Property will not be occupied as a residence.

_____  Grantee hereby certifies that pre-1960 housing will not be used as a residence and will be demolished, in accordance with local laws and regulations.

*Under penalty of perjury, the Grantee hereby declares that the foregoing statements are true and correct to the best of his or her knowledge and belief.*

By:  *Teresa Tracy M.A. DSW*
Print Name:  *Teresa Tracy EdD, Sw, DSW, CCAS*
Title:  *President*
Date:  *April 11, 2006*

# EXHIBIT B



**DEPARTMENT OF HEALTH & HUMAN SERVICES**

Program Support Center
Bethesda MD 20814

October 25, 2018

Mr. Roger Bradley
President
Integrated Community Services of
 Parkersburg
4200 Emerson Avenue
Parkersburg, West Virginia

Re:    Army Reserve Center
       4200 Emerson Avenue
       04-WV-2283   4-D-WV-550

Dear Mr. Bradley:

It has been brought to the this Department's attention that the above-referenced property that was transferred by the U.S. Department of Health and Human Services to Integrated Community Services of Parkersburg (formerly, Worthington Mental Health Services, Inc.) for homeless assistance purposes may not be fully utilized.  We have tried to contact you via email and telephone on numerous occasions but have failed to reach you.

Please contact this office immediately to avoid future administrative action, which may include reversion of the property to the Federal government.  I can be reached by email, Theresa.ritta@psc.hhs.gov or telephone, (202) 823-1348.

Sincerely,

**Theresa
M. Ritta -S**
Digitally signed by Theresa M.
Ritta -S
DN: c=US, o=U.S. Government,
ou=HHS, ou=PSC, ou=People,
0.9.2342.19200300.100.1.1=2000
003750, cn=Theresa M. Ritta -S
Date: 2018.10.25 09:26:22 -04'00'

Theresa Ritta, Program Manager
Real Property Management Services
Program Support Center

1

# EXHIBIT C



**DEPARTMENT OF HEALTH & HUMAN SERVICES**  Program Support Center
Bethesda MD 20814

April 15, 2019

<u>Transmitted via Email and certified mail USPS</u>

Mr. Roger Bradley
President
Integrated Community Services of
 Parkersburg
4200 Emerson Avenue
Parkersburg, West Virginia

Re:   Army Reserve Center
      4200 Emerson Avenue
      04-WV-2283   4-D-WV-550

Dear Mr. Bradley:

By letter dated October 25, 2018 (copy enclosed), the U.S. Department of Health and Human
Services ("HHS") requested Integrated Community Services of Parkersburg ("Grantee") contact
HHS to discuss the Grantee's failure to fully utilize the above-referenced property ("Property").
To date, we have not heard from the Grantee.

HHS transferred the Property to the Grantee, by Quitclaim Deed dated March 23, 2006 ("Deed")
(copy enclosed).  Said Deed is subject to, amongst other things, condition subsequent number
one which requires, "[t]hat for a period of thirty (30) years from the date hereof the Property
herein conveyed will be used continuously for health purposes in accordance with the Grantee's
approved program of utilization…".  Additionally, Deed condition subsequent number four
requires, "[t]hat one year from the date hereof and annually thereafter for the aforesaid period of
thirty (30) years, unless Grantor or its successor in function directs otherwise, Grantee will file
with Grantor or its successor in function reports on the operation and maintenance of the
Property…" The Grantee has failed to meet both of these requirements and therefore, is not in
compliance with the Deed.

As stated in our October 25, 2018 letter, failure to contact HHS would result in administrative
action.  Considering the Grantee has not contacted HHS as directed and is in noncompliance with
Deed conditions number one and four, HHS is taking proper and necessary corrective action.
HHS has selected, subsequent to our receipt of an approved application, Recovery Point of
Huntington, Inc. (Recovery Point), an eligible organization, to acquire the property via a
retransfer action.  Recovery Point is currently operating a portion of the building under a Lease
Agreement, dated January 27, 2018, with the Grantee, and therefore, is a logical organization to
acquire the property for continued homeless assistance purposes.  As such, the Grantee is

1

directed to immediately provide access to the entire property to Recovery Point so it may take the necessary steps to implement its approved program of use.  The Grantee must also advise HHS of the amount received from Recovery Point during the duration of the above-mentioned lease, and account for said monies.  See, 45 C.F.R. 12.9(c).

Additionally, the Grantee is directed to sign the enclosed Quitclaim Deed which when fully executed will transfer the property from the Grantee to Recovery Point.  Please ensure your signature is notarized by a notary public, and send the original signed and notarized document to:

> Attn:  Theresa Ritta, Program Manager
> U.S. Department of Health and Human Services
> Program Support Center/RLO/RPMS
> 7700 Wisconsin Avenue, 7209C
> Bethesda, Maryland 20814

This represents HHS's final decision regarding this noncompliance matter.  We expect the above actions be completed within the next thirty (30) days.  Grantee's failure to fully comply with the terms of this letter will result in additional remedial action.  Should you have any questions, please do not hesitate to contact me by email, Theresa.Ritta@psc.hhs.gov, or telephone, (202) 823-1348.

> Sincerely,
>
> Theresa
> M. Ritta -S
>
> Digitally signed by Theresa M. Ritta
> -S
> DN: c=US, o=U.S. Government,
> ou=HHS, ou=PSC, ou=People,
> 0.9.2342.19200300.100.1.1=200000
> 3750, cn=Theresa M. Ritta -S
> Date: 2019.04.15 14:19:06 -04'00'
>
> Theresa Ritta, Program Manager
> Real Property Management Services
> Program Support Center

Enclosures

JS 44  (Rev. 02/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a)  PLAINTIFFS

United States of America

**(b)**  County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)**  Attorneys *(Firm Name, Address, and Telephone Number)*
Fred B. Westfall, Jr., Assistant United States Attorney
U.S. Attorney's Office, 300 Virginia Street, East, Room 4000
Charleston, WV  25301  (304) 345-2200

## DEFENDANTS

Integrated Community Services of Parkersburg, Inc., formerly known as Worthington Health Services, Inc. and Roger Bradley

County of Residence of First Listed Defendant    Wood
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
             THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☒ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☐ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                      *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**    **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane    ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product      Product Liability | |      28 USC 157 |      3729(a)) |
| ☐ 140 Negotiable Instrument |      Liability    ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel &      Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
|      & Enforcement of Judgment |      Slander      Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'      Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted |      Liability    ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
|      Student Loans | ☐ 340 Marine      Injury Product | |      New Drug Application | ☐ 470 Racketeer Influenced and |
|      (Excludes Veterans) | ☐ 345 Marine Product      Liability | | ☐ 840 Trademark |      Corrupt Organizations |
| ☐ 153 Recovery of Overpayment |      Liability    **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
|      of Veteran's Benefits | ☐ 350 Motor Vehicle    ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle    ☐ 371 Truth in Lending |      Act | ☐ 862 Black Lung (923) |      Protection Act |
| ☒ 190 Other Contract |      Product Liability    ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal      Property Damage |      Relations | ☐ 864 SSID Title XVI | ☐ 850 Securities/Commodities/ |
| ☐ 196 Franchise |      Injury    ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) |      Exchange |
| | ☐ 362 Personal Injury -      Product Liability | ☐ 751 Family and Medical | | ☐ 890 Other Statutory Actions |
| |      Medical Malpractice |      Leave Act | | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS**    **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights    **Habeas Corpus:** | ☐ 791 Employee Retirement | ☐ 870 Taxes (U.S. Plaintiff | ☐ 895 Freedom of Information |
| ☐ 220 Foreclosure | ☐ 441 Voting    ☐ 463 Alien Detainee |      Income Security Act |      or Defendant) |      Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment    ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/      Sentence | |      26 USC 7609 | ☐ 899 Administrative Procedure |
| ☐ 245 Tort Product Liability |      Accommodations    ☐ 530 General | | |      Act/Review or Appeal of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities -    ☐ 535 Death Penalty | **IMMIGRATION** | |      Agency Decision |
| |      Employment    **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of |
| | ☐ 446 Amer. w/Disabilities -    ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | |      State Statutes |
| |      Other    ☐ 550 Civil Rights |      Actions | | |
| | ☐ 448 Education    ☐ 555 Prison Condition | | | |
| |    ☐ 560 Civil Detainee - | | | |
| |      Conditions of | | | |
| |      Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from Another District *(specify)*
- ☐ 6  Multidistrict Litigation - Transfer
- ☐ 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. 2201 - Declaratory Judgment
Brief description of cause:
GSA owned property - defendants breached conditions of deed

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE  07/10/2019

SIGNATURE OF ATTORNEY OF RECORD
*Fred B. Westfall*          Fred B. Westfall, Jr., AUSA

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____