```
             UNITED STATES DISTRICT COURT
          SOUTHERN DISTRICT OF WEST VIRGINIA
                     AT CHARLESTON
```

**UNITED STATES OF AMERICA,**

       Plaintiff,

v.                                        Civil Action No. 2:19-cv-00506

**INTEGRATED COMMUNITY SERVICES
OF PARKERSBURG, INC.,** formerly
Known as Worthington Mental Health
Services, Inc., and **ROGER BRADLEY,**

       Defendants.

## MEMORANDUM OPINION AND ORDER

Pending is plaintiff United States of America's motion for default judgment, filed December 23, 2019. ECF No. 13.

### I. Background

This case arises from the transfer of real property located at 4200 Emerson Avenue, Parkersburg, West Virginia ("the property") from the United States, through the Department of Health and Human Services ("HHS"), to Worthington Mental Health Services, Inc. ("Worthington") by quitclaim deed on March 23, 2006. Compl. ¶¶ 1, 8, 10. Worthington later changed its name to Integrated Community Services of Parkersburg, Inc. ("Integrated"), defendant in this case. Id. at ¶ 10. The other

defendant, Roger Bradley, is the president of Integrated.  Id. at ¶ 6.

HHS transferred the property to Worthington pursuant to the Federal Property and Administrative Services Act of 1949, 40 U.S.C. § 550, which "allows the transfer of property owned by the United States for the protection of public health," and pursuant to the McKinney-Vento Homeless Assistance Act, 42 U.S.C. § 11411, which "allows the use of public buildings and real property to assist the homeless."  Id. at ¶ 13.

The deed specifically describes the property as "Tract No. A-100 consisting of 3.40 acres fee [. . .] acquired [by deed] from Robert W. and Charles R. Ingram on 10 January 1957, and recorded among the land records of Wood County, West Virginia, in Book 406 of Deeds at page 259 (File No. 33-50-134-1)."  Quitclaim Deed ("Deed"), Compl., Ex. A, ECF No. 1-1, 2. The parties recorded the Deed in the Wood County, West Virginia Clerk's Office.  Compl. ¶ 11.

The Deed contains six "conditions subsequent, which shall be binding and enforceable against [the] Grantee, its successors and assigns."  Deed 3-4.  First, the Deed provides: "[t]hat for a period of thirty (30) years from the date hereof the Property herein conveyed will be used continuously for

health purposes in accordance with Grantee's approved program of utilization as set forth in its application dated October 13, 2005, and amended November 15 and December 28, 2005, and for no other purpose . . . ."[1]  Id. at 3.  Second, the Deed states: "[t]hat during the aforesaid period of thirty (30) years Grantee will not resell, lease, mortgage, or encumber or otherwise dispose of any part of the Property or interest therein except as Grantor or its successor in function may authorize in writing . . . ."  Id.  Third, the Deed requires that the property "be placed into use within twelve months" of the instrument's date with an exception if construction or major renovation is contemplated at the time of the transfer.  Id.

---

[1]    The United States indicates that the property "was not being fully utilized [by Integrated] for homeless assistance as required by the Deed . . ." and claims that this failure constitutes a breach of a condition subsequent.  Pl.'s Mem. Supp. Motion for Def. Jmt. 7, 10, ECF No. 14.  The plaintiff does not explain why full utilization of the property for such a purpose is required by the Deed, but a provision of the approved program of utilization mentioned in the first condition subsequent likely provides the answer to this question.
    Inasmuch as the United States has not produced any specific information about the program itself, the court declines to address whether full utilization for this purpose was required under the program and the Deed.  Ultimately, however, this issue is immaterial to the resolution of the pending motion.

Fourth, the deed provides:

> [t]hat one year from the date hereof and annually thereafter for the aforesaid period of thirty (30) years, unless Grantor or its successor in function directs otherwise, Grantee will file with Grantor or its successor in function reports on the operation and maintenance of the Property and will furnish, as requested, such other pertinent data evidencing continuous use of the Property for the purposes specified in the above-identified application . . . .

Id. Fifth, the Deed requires that the grantee remain "a tax-supported organization or a nonprofit institution, organization, or association exempt from taxation under section 501(c)(3) of the Internal Revenue Code of 1986, as amended . . ." for the duration of the conveyance. Id. at 4. The sixth condition mandates compliance with certain provisions of federal law, including, as relevant here, "all requirements imposed by or pursuant to the regulations of Grantor (45 CFR Parts 12, 80, 84, 86 and 91) . . . ." Id. at 4.

4

Immediately following these listed conditions, the Deed further provides that:

> [i]n the event of a breach of any of the conditions subsequent set forth above, whether caused by the legal or other inability of Grantee, its successors and assigns, to perform any of the obligations herein set forth, Grantor or its successor in function will, at its option, have an immediate right of reentry thereon, and to cause all right, title, and interest in and to the Property to revert to the United States of America, and Grantee, its successors and assigns, shall forfeit all right, title, and interest in and to the Property and to any and all of the tenements, hereditaments, and appurtenances thereunto belonging . . . .

Id. at 4.

Finally, as relevant here, the Deed states that:

> [i]n the event title to the Property or any part thereof is reverted to the United States of America for noncompliance . . . Grantee, its successors or assigns . . . shall be responsible for and shall be required to reimburse the United States of America for the decreased value thereof . . . . The United States of America shall . . . . be reimbursed for such damage, including such costs as may be incurred in recovering title to or possession of the above-described property, as it may sustain as a result of such noncompliance.

Id. at 6.

Pursuant to the conditions of the Deed, HHS required Integrated to submit annual utilization reports evidencing continued use of the property for homeless assistance programs. Compl. ¶¶ 15, 17. HHS notified Integrated in June 2018 that the

defendant had failed to submit a timely 2017 utilization report, but the plaintiff was unable to obtain the requisite information after multiple attempts to contact Integrated. Id. at ¶¶ 17, 25-26.

With HHS' approval, Integrated leased a portion of the property to Recovery Point of Parkersburg ("Recovery Point") beginning in January 2017. Id. at ¶ 16. After HHS notified Integrated of its delinquent reporting, the agency conducted an October 29, 2018 inspection of the property. Id. at ¶ 19. HHS discovered that while Recovery Point was operating its facility on the portion of the property it leased from Integrated, a remaining portion of the property appeared to be vacant. Id. HHS later learned that a portion of the property that was not leased to Recovery Point had been rented or leased to a third-party entity for equipment storage without HHS' permission. Id. at ¶ 20.

After months of fruitless notices to Integrated and Bradley, HHS sent Bradley a final letter dated April 15, 2019 indicating that Integrated had failed to comply with the conditions of the Deed. Compl., Ex. C, ECF No. 1-1, 18-19. HHS attached a new quitclaim deed to this letter and directed Integrated to sign it to convey the property to Recovery Point of Huntington. Id. Neither Bradley, nor any other agent of

Integrated, signed that deed or responded in any manner. Compl. ¶ 21.

The United States subsequently filed this action on July 10, 2019, naming Integrated and Bradley as defendants. Compl. The United States' complaint alleges four counts: (1) reverter of title to the property due to breach of conditions subsequent;[2] (2) ejectment of Integrated for breach of the conditions subsequent; (3) costs, fees, and damages associated with exercising its rights under the Deed and any decrease in the value of the property in accordance with the terms of the Deed; and (4) "misappropriation of funds and breach of condition subsequent" for Bradley's collection of rents and payments relating to Integrated's lease or rental of the property to a third-party for uses not prescribed by the Deed and federal law. Id. at ¶¶ 31-52.

The complaint requests an order and judgment: (1) declaring that the United States is vested with title to the property in fee simple free of any liens, mortgages, or encumbrances; (2) directing the Clerk of Wood County to take

---

[2] The complaint elsewhere indicates that the United States seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 and requests that an order and judgment be entered declaring that title has vested with the plaintiff. Compl. 3, 11. The court therefore construes this count to seek a declaratory judgment.

action to reflect that the United States is vested with absolute and unencumbered title; (3) compelling Integrated to convey the property by deed to the United States; (4) awarding the United States exclusive possession of the property; (5) ejecting Integrated and "any other entity or person not authorized by HHS and/or the United States [] from possession of the [p]roperty;" (6) awarding costs and disbursements relating to this case; (7) "compelling Roger Bradley to pay the United States all rental and other payments he collected or had collected on his behalf or on behalf of Integrated in contravention to the terms of the Deed and federal law regarding the Program involving the Property;" and (8) "[s]uch other relief as the Court shall deem proper and just." Id. at 11.

Integrated and Bradley were served with process on September 4, 2019. ECF Nos. 8-9. The district court entered default against Integrated on September 26, 2019 pursuant to Federal Rule of Civil Procedure 55(a). ECF No. 10. The United States subsequently filed the pending motion for default judgment against Integrated on December 23, 2019. ECF No. 13.[3]

---

[3] The clerk of the court entered default against Bradley on December 31, 2019. ECF No. 15. The pending motion does not seek default judgment against Bradley. ECF No. 13.

8

## II. Legal Standard

Default judgments are governed by Rule 55 of the Federal Rules of Civil Procedure. Rule 55(a) states that if a party has "failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Once default has been entered by the clerk, the plaintiff may move the court to enter default judgment against the defendant pursuant to Rule 55(b)(2). Fed. R. Civ. P. 55(b)(2).

"The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact[.]" Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001) (quoting Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)). "The defendant is not held . . . to admit conclusions of law." Id. (quoting Nishimatsu, 515 F.2d at 1206) (alteration in original). "The court must, therefore, determine whether the well-pleaded allegations in [the] complaint support the relief sought in [the] action." Id. (citation omitted). "Assuming that the well-pleaded facts demonstrate that the plaintiff is entitled to relief," the court must make an "independent determination" regarding the appropriate remedy. Woods v. Oxford Law, LLC, No. 2:13-6467, 2015 WL 778778, at *3

(S.D. W. Va. Feb. 24, 2015) (citing Ryan, 253 F.3d at 780-81; S.E.C. v. Lawbaugh, 359 F.Supp.2d 418, 422 (D. Md. 2005)).

III. Discussion

The motion for default judgment requests an order and judgment: (1) "declaring that the United States of America is vested with exclusive title to the Property, in fee simple free and clear of any liens, mortgages, or encumbrances;" (2) directing the Clerk of Wood County to take action to reflect that the United States is vested with absolute and unencumbered title in fee simple; (3) conveying the property to the United States; (4) awarding the United States exclusive possession of the property; and (5) ejecting Integrated and "any other entity or person not authorized by HHS and/or the United States" from the property. ECF No. 13.

In support of the motion, the plaintiff makes two related arguments: (1) title to the property has reverted to it under federal law, state law, and the conditions of the Deed; and (2) the plaintiff is entitled to a declaration that it has exclusive title to the property because title has reverted. Pl.'s Mem. 8-12. The United States cites various provisions of the McKinney-Vento Act and accompanying regulations, 45 C.F.R. 12a.1, et seq., as well as the Federal Property and

Administrative Services Act for the proposition that it is entitled to relief under federal law. Id. at 9.

However, the threshold question facing the court – whether the Deed contains conditions subsequent providing for reverter of title – is a matter of state law. "A possibility of reverter, as distinguished from a reversion, is not an estate at common law[,] and in the case of a fee limited on a condition subsequent[,] a possibility of reverter is a contingent right of re-entry on condition broken." Cty. Of Wheeling v. Zane, 173 S.E.2d 158, 161 (W. Va. 1970). If a deed contains a possibility of reverter and a condition subsequent, title to the deeded property will revest with the grantor upon breach of the condition subsequent. See Myers v. Town of Milton, 137 S.E.2d 441, 448 (W. Va. 1964).

"Conditions subsequent, having the effect in case of a breach to defeat estates already vested, are not favored in law, and hence always receive a strict construction." Killgore v. Cabell County Court, 92 S.E. 562, 564 (W. Va. 1917) (citation omitted). Thus, a deed's purported conditions that recite "mere declarations of motive" for conveying a property are not construed as conditions subsequent that entitle a grantor to title of that property upon breach. Myers, 137 S.E.2d at 448. "[U]nless the language used clearly shows that the title should

11

revest upon failure to comply with the conditions, the deed will not be held to be a deed upon condition subsequent. Some provision therein must specify that the title shall revert to the grantor." Id. (citing Killgore, 92 S.E. at 562).

In this case, the Deed clearly designates the six numbered provisions as "conditions subsequent, which shall be binding and enforceable against" grantee Worthington and its successor in interest, i.e. Integrated. Deed 3-4. Moreover, the paragraph immediately following the numbered provisions states that the grantor will have an immediate right of reentry and a right "to cause all right, title, and interest in and to the [p]roperty to revert to the United States of America" upon a breach of any condition subsequent. Id. at 4. This paragraph further provides that the "[g]rantee, its successors and assigns, shall forfeit all right, title, and interest in and to the [p]roperty and to any and all of the tenements, hereditaments, and appurtenances thereunto belonging . . . ." Id. at 4. These provisions ostensibly evidence explicit conditions subsequent and a possibility of reverter.

The second question facing the court is whether Integrated breached the conditions subsequent. And accepting the well-pleaded facts of the complaint, it appears that the defendant has breached several of these conditions.

Integrated breached the second condition subsequent by leasing a portion of the property to another entity for storage space without HHS' permission. Integrated also failed to furnish the requested annual reports evidencing continuous use of the property for the homeless assistance programs in violation of the fourth condition subsequent.

Integrated's conduct may also constitute a breach of the sixth condition subsequent. That condition requires compliance with requirements imposed by or pursuant to 45 C.F.R. Part 12, "Disposal and Utilization of Surplus Real Property for Public Health Purposes." 45 C.F.R. § 12.9 provides that certain surplus real property transfers by HHS must be subject to terms and conditions, including, *inter alia*, a restriction on leasing subject property without prior HHS authorization and a requirement that "[t]he transferee will file with [HHS] such reports covering the utilization of the property as may be required." 45 C.F.R. § 12.9(c)(2)-(3). Integrated has failed to comply with the explicit terms of the Deed that were mandated by this regulation and has thus arguably breached the sixth condition subsequent.

Inasmuch as the court finds that Integrated has breached multiple conditions subsequent, the court agrees with the plaintiff that it is entitled to declaratory relief.

13

"[U]pon the filing of an appropriate pleading, [a court] may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  This court has recognized that default judgment may be appropriate "when a properly served defendant fails to respond to a complaint for declaratory relief."  Crum v. Canopius US Ins. Inc., No. 2:14-cv-24861, 2015 WL 4772436, at *3 (S.D. W. Va. July 2, 2015) (citing Scottsdale Ins. Co. v. Bounds, No. BEL-11-2912, 2012 WL 1576105 (D. Md. May 2, 2012); Nautilus Ins. Co. v. BSA Ltd. P'ship, 602 F.Supp.2d 641, 645-46 (D. Md. 2009); Am. Select Ins. Co. v. Taylor, 445 F. Supp. 2d 681, 684 (N.D. W.Va. 2006)).  The record evidences service on Integrated on September 4, 2019.  Inasmuch as it appears that the Deed contained a possibility of reverter and conditions subsequent that were breached, the court will enter declaratory judgment reflecting that title to the property has reverted to and revested with the United States.

       Turning to the issue of ejectment, the court notes that "West Virginia has codified the common law of ejectment actions . . . ."  Moore v. Equitrans, L.P., 818 F. App'x 212, 223 (4th Cir. June 26, 2020) (Niemeyer, J. concurring) (citing W. Va. Code § 55-4-1, et seq.).

14

> W. Va. Code § 55-4-1 (1923)[,] et seq., entitled
> "Ejectment," . . . provides a cause of action for the
> recovery of possession of real estate unlawfully
> withheld by another.  In the usual case, the
> plaintiff, asserting a right to the property, alleges
> that the defendant has entered the premises and is
> unlawfully withholding possession, or claims
> ownership, title or interest therein to the
> plaintiff's detriment.

Heartwood Forestland Fund IV, L.P. v. Hoosier, 781 S.E. 391, 395 (W. Va. 2015).  The Supreme Court of Appeals of West Virginia has held that a plaintiff may pursue a statutory ejectment action where the deed in question contains "a condition subsequent[,] the breach of which works a forfeiture of the title and reinvestiture thereof in the grantor . . . ."  Sands v. Holbert, 117 S.E. 896, 897 (W. Va. 1923).  "If [the] defendant, by reason of his [breach of a condition subsequent], has been divested of the title and plaintiff given a right of re-entry, plaintiff can maintain ejectment and should prevail." Id.

The court has found that Integrated breached conditions subsequent contained in the Deed.  Accordingly, the United States is also entitled to prevail on its ejectment claim.

Inasmuch as the court has reached the foregoing conclusions, the court finds that the United States is entitled to the relief it seeks with several qualifications.  First, the

15

remedies granted will be circumscribed by those alleged in the complaint's prayer for relief pursuant to Federal Rule of Civil Procedure 54(c).[4]  See Fed. R. Civ. P. 54(c) (stating that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings.").  Second, although the complaint requests that the court declare that title has vested with the United States "free and clear of any liens, mortgages, or encumbrances," the court declines to go so far because the record does not reflect what, if any, liens, mortgages, or other encumbrances burden the property.  Third, the court declines to "direct" the Clerk of the Wood County Commission, who is not a party to this action, to take action to reflect that title to the property has vested with the United States but will suggest that the clerk may take action to do so by filing a copy of the forthcoming judgment order in Wood County's Book of Deeds.  And fourth, the United States will be entitled to exclusive possession of the property with an exception for Recovery Point and any other possessor who has been approved by HHS.

---

[4]  On a different but related note, the United States' motion has notably omitted any request for costs or proceeds relating to Bradley's lease or rental of the property to a third-party even though these monetary remedies are requested in the complaint.  Accordingly, the court will not grant such relief.

IV. Conclusion

Accordingly, it is ORDERED that:

1. The United States' motion for default judgment (ECF No. 13) be, and it hereby is, GRANTED, in part, and DENIED in part.

2. The court declares that title to the property at issue in this case, "Tract No. A-100 consisting of 3.40 acres fee . . . acquired [by deed] from Robert W. and Charles R. Ingram on 10 January 1957, and recorded among the land records of Wood County, West Virginia, in Book 406 of Deeds at page 259 (File No. 33-50- 134-1)," has reverted to and vested with the United States in fee simple.

3. The Clerk of the Wood County Commission may take action to reflect that title to the property has reverted to and vested with the United States by filing a copy of the judgment order in Wood County's Book of Deeds.

4. Integrated shall execute and deliver a deed conveying the property to the United States, but the failure of Integrated to do so will not affect the reversion and vesting of title in the United States as above indicated.

      5.    Integrated and any other entities possessing all or part of the property without HHS' authorization are EJECTED from the property.

      6.    The United States is entitled to exclusive possession of the property with an exception for Recovery Point or any other possessor who is in possession with the approval of HHS.

The Clerk is directed to transmit copies of this order to all counsel of record and any unrepresented parties.

                              ENTER:    September 28, 2020

                                John T. Copenhaver, Jr.
                                Senior United States District Judge