```
           UNITED STATES DISTRICT COURT
        SOUTHERN DISTRICT OF WEST VIRGINIA
                  AT CHARLESTON
```

**UNITED STATES OF AMERICA,**

       Plaintiff,

v.                                Civil Action No. 2:19-cv-00506

**INTEGRATED COMMUNITY SERVICES
OF PARKERSBURG, INC., formerly
Known as Worthington Mental Health
Services, Inc., and ROGER BRADLEY,**

       Defendants.

## MEMORANDUM OPINION AND ORDER

Pending are plaintiff United States of America's motion for default judgment against defendant Roger Bradley (ECF No. 21), filed February 8, 2021, and motion for summary judgment against defendants Integrated Community Services of Parkersburg, Inc. ("Integrated") and Bradley (ECF No. 23), filed February 8, 2021.

### I.  Background

This case arises from the transfer of real property located at 4200 Emerson Avenue, Parkersburg, West Virginia ("the property") from the United States, through the Department of Health and Human Services ("HHS"), to Worthington Mental Health Services, Inc. ("Worthington") by quitclaim deed on March 23,

2006.  Declaration of Theresa Ritta ("Declaration"), ECF No. 23-1, at ¶¶ 3-4.  Worthington later changed its name to Integrated Community Services of Parkersburg, Inc., the defendant in this case.  Id. at ¶ 4.  The other defendant, Bradley, is the executive director of Integrated.[1]  Id. at ¶ 11.

HHS transferred the property to Worthington pursuant to the Federal Property and Administrative Services Act of 1949, 40 U.S.C. § 550, which "allows the transfer of property owned by the United States for the protection of public health," and pursuant to the McKinney-Vento Homeless Assistance Act, 42 U.S.C. § 11411, which "allows the use of public buildings and real property to assist the homeless."  Id. at ¶ 7.

The quitclaim deed contains six "conditions subsequent, which shall be binding and enforceable against [the] Grantee, its successors and assigns."  Quitclaim Deed ("Deed"), ECF No. 23-1, at 11.  First, the Deed provides "[t]hat for a period of thirty (30) years from the date hereof the Property herein conveyed will be used continuously for health purposes in accordance with Grantee's approved program of utilization as set forth in its application dated October 13, 2005, and amended

---

[1] The United States refers to Bradley interchangeably as both the "executive director" and "president" of Integrated.  For the purposes of consistency, the court will refer to him as the "executive director."

November 15 and December 28, 2005, and for no other purpose." Id.  Second, the Deed provides that during that thirty-year period, the "Grantee will not resell, lease, mortgage, or encumber or otherwise dispose of any part of the Property or interest therein except as Grantor or its successor in function may authorize in writing." Id.  Third, it requires that the property "be placed into use within twelve (12) months" of the instrument's date.[2] Id.  Fourth, the Deed provides:

> [t]hat one year from the date hereof and annually thereafter for the aforesaid period of thirty (30) years, unless Grantor or its successor in function directs otherwise, Grantee will file with Grantor or its successor in function reports on the operation and maintenance of the Property and will furnish, as requested, such other pertinent data evidencing continuous use of the Property for the purposes specified in the above-identified application . . . .

Id. at 11–12.  Fifth, it requires that the grantee "remain a tax-supported organization or a nonprofit institution" for the length of the thirty-year period.  Id. at 12.  Finally, the sixth condition requires the grantee to remain in compliance with numerous federal laws including "all requirements imposed by or pursuant to the regulations of Grantor (45 CFR Parts 12, 80, 84, 86 and 91)." Id.

---

[2] The third condition subsequent provides an inapplicable exception "[w]here construction or major renovation is contemplated at the time of transfer . . .."

3

According to Theresa Ritta, a Real Property Management Services Program Manager for HHS, "[t]he approved program of utilization" described in the first condition subsequent "provided that the property would be continually used for the approved program - homeless assistance supportive services, including drop-in center, case management, mental health and substance abuse program, etc. - for a period of 30 years." Declaration, at ¶ 8.

In the event that the grantee breaches any of the conditions subsequent, the Deed provides the United States a right of reentry and a right to cause the property to revert to the United States' possession. Deed, at 12.

The Deed also provides:

> [i]n the event title to the Property or any part thereof is reverted to the United States of America for noncompliance . . . Grantee, its successors or assigns . . . shall be responsible for and shall be required to reimburse the United States of America for the decreased value thereof . . . . The United States of America shall . . . be reimbursed for such damage, including such costs as may be incurred in recovering title to or possession of the above-described property, as it may sustain as a result of such noncompliance.

Id. at 14.

Finally, the Deed states that:

> Grantee . . . further covenants and agrees for itself, its successors and assigns, that in the event the Property or any part thereof is, at any time within

4

>     the period of thirty (30) years from the date of this
>     conveyance, sold, leased, disposed of, or used for
>     purposes other than those designated in condition
>     numbered 1 above without the consent of Grantor, or
>     its successor in function, all revenues therefrom or
>     the reasonable value, as determined by Grantor, or its
>     successor in function, of benefits to Grantee,
>     deriving directly or indirectly from such sale, lease,
>     disposal, or use, shall be considered to have been
>     received and held in trust by Grantee for the United
>     States of America and shall be subject to the
>     direction and control of Grantor, or its successor in
>     function; but the provisions of this paragraph shall
>     not impair or affect the rights reserved to Grantor
>     under any other provision of this deed.

Id.

According to Ritta, HHS noticed that the property was being underutilized as early as 2011 and worked with Integrated "to put the entire property into full use for homeless assistance purposes." Declaration, at ¶ 9. On January 30, 2017, Integrated entered into a lease of a portion of the property to Recovery Point of Huntington, Inc. ("Recovery Point") "for use and occupation as a rehabilitation facility for men and for no other purpose."[3] Declaration, at ¶¶ 9, 20; Lease Agreement, ECF No. 23-1, at 34-42. Under the lease agreement,

---

[3] The court's September 28, 2020 memorandum opinion and order characterized this entity as "Recovery Point of Parkersburg" based on the representations in the complaint. See ECF No. 17, at 6. The United States has now produced the actual agreement between Integrated and Recovery Point, which clarifies that the entity is "Recovery Point of Huntington, Inc." Lease Agreement, ECF No. 23-1, at 34-42.

Recovery Point was to pay Integrated $1,500 per month in rent. Lease Agreement, at 34.

On January 31, 2017, Ritta, on behalf of HHS, executed a "Consent Instrument" approving the lease to Recovery Point for such use. Declaration, at ¶ 9; see Consent Instrument, ECF No. 23-1, at 30-33. The Consent Instrument provided that the consent granted by the government was subject to several conditions:

> (1) that use of the leased space will not unduly interfere with the uses for which the aforesaid real property was transferred to the Grantee;
>
> (2) that this consent does not constitute consent to future leases, sales, mortgages, encumbrances, or other disposal of any portion of the property thereby conveyed or any interest therein whether or not referenced in the lease proposal;
>
> (3)  that the Federal Government has the right to enter the Premises with 2 days' notice except in the event of exigent circumstances, in which case such notice shall not be required;
>
> (3) [sic, (4)]  that this consent shall not be deemed a waiver or relinquishment of any of the conditions, restrictions, reservations, rights or remedies provided for in the said deed hereinabove referred to; and
>
> (4)  [sic, (5)] that the said lease be terminated as written above [i.e., "on January 31, 2027 or sooner in the event of a material breach to the terms of the lease or by the Grantor, upon 30 days' notice, in the event the property is reverted back to the United States of America."]

Id. at 31.

6

Ritta claims that HHS conducted a site visit on October 29, 2018, whereupon the agency discovered that "[w]hile RPP [i.e., Recovery Point] [wa]s fully operating its program on the portion of the property it is leasing from the grantee, the portion to be utilized by grantee was vacant and appeared to be for some time." Declaration, at ¶ 12. Recovery Point advised that its rental check for October 2019 had been picked up by a "friend" of Bradley. Id. HHS attempted to contact Bradley with no success, whereupon it notified Recovery Point "to hold all future rental checks for the benefit of the Federal government while this matter was being investigated." Id.

Ritta avers that Recovery Point paid Bradley and Integrated $47,500 in rent between April 2017 and November 2019. Declaration, at ¶ 20. She states that "Bradley and ICS did not use those revenues for the program . . . [and] did not submit any documentation to HHS to show that those revenues were used in the program set forth in the Deed to the Property." Id. Moreover, Ritta claims that "Bradley could not have used some of the payments for program purposes because ICS had ceased operating the approved program." Id.

Additionally, Ritta maintains that Bradley and Integrated sublet a portion of the property for equipment storage purposes to Walker Machinery Company ("Walker"), in

7

violation of the terms and conditions of the Deed and 45 C.F.R. § 12.9.  See Declaration, at ¶ 13, 19.  Walker made near-monthly $300 payments to Integrated from September 1, 2017, through March 1, 2019.  See id., at ¶ 19; Accounting Records, ECF No. 23-1, at 24-28.  All such payments, totaling $25,200, are described as rent payments in a record produced by Walker, with the exception of the first two labelled "Contribution" and "Donation 2012."  Accounting Records, at 27-28.  The United States and HHS did not consent to the Walker sublease and were not paid any of the $25,200.  Declaration, at ¶ 19.

The United States filed this action on July 10, 2019, naming Integrated and Bradly as defendants.  Compl., ECF No. 1. The complaint alleges four counts: (I) reverter because of breach of condition subsequent, (II) ejectment because of breach of condition subsequent, (III) costs because of breach of condition subsequent, and (IV) misappropriation of funds and breach of condition subsequent.  Id. at ¶¶ 30–52.  Counts I–III are asserted against Integrated, while Count IV is asserted against Bradley, "both personally and as Executive Director" of Integrated.  Id.

Integrated and Bradley were served with process on September 4, 2019.  ECF Nos. 8-9.  The clerk entered default against Integrated on September 26, 2019, pursuant to Federal

Rule of Civil Procedure 55(a). ECF No. 10. The United States subsequently moved for default judgment against Integrated on December 23, 2019. ECF No. 13. That motion was granted, in part, by this court on September 28, 2020. ECF No. 17. The court thereafter entered judgment for the United States against Integrated, ordering reversion of the Wood County property to the United States and ejecting Integrated and all other entities possessing all or part of the property without HHS' authorization. ECF No. 18.

Ritta claims that in order to obtain full possession of and access to the property, the United States had to have the locks on the premises changed. Declaration, at ¶ 22. The lock service charged $78.00 for the service call and re-keying of the premises. Id.; Invoice, ECF No. 23-1 at 48.

As to Bradley, the clerk of court entered default on December 31, 2019. ECF No. 15. On February 8, 2021, the United States moved for default judgment against Bradley and summary judgment against Integrated and Bradley as to damages owed. ECF Nos. 21, 23.

## II.  Legal Standards

A. <u>Default Judgment</u>

Default judgments are governed by Rule 55 of the Federal Rules of Civil Procedure.  Rule 55(a) states that if a party has "failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  Once default has been entered by the clerk, the plaintiff may move the court to enter default judgment against the defendant pursuant to Rule 55(b)(2).  Fed. R. Civ. P. 55(b)(2).

"The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact[.]"  <u>Ryan v. Homecomings Fin. Network</u>, 253 F.3d 778, 780 (4th Cir. 2001) (quoting <u>Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank</u>, 515 F.2d 1200, 1206 (5th Cir. 1975)).  "The defendant is not held . . . to admit conclusions of law."  <u>Id.</u> (quoting <u>Nishimatsu</u>, 515 F.2d at 1206) (alteration in original).  "The court must, therefore, determine whether the well-pleaded allegations in [the] complaint support the relief sought in [the] action."  <u>Id.</u> (citation omitted).  "Assuming that the well-pleaded facts demonstrate that the plaintiff is entitled to relief," the court must make an "independent determination" regarding the appropriate remedy.

10

Woods v. Oxford Law, LLC, No. 2:13-6467, 2015 WL 778778, at *3 (S.D. W. Va. Feb. 24, 2015) (citing Ryan, 253 F.3d at 780-81; S.E.C. v. Lawbaugh, 359 F. Supp. 2d 418, 422 (D. Md. 2005)).

B.  Summary Judgment

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material" facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010). A "genuine" dispute of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-moving party. Anderson, 477 U.S. at 248.

Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). A party is entitled to summary judgment if the record, as a whole, could not lead a rational trier of fact to find for the non-moving party. Williams v. Griffin, 952 F.2d

820, 823 (4th Cir. 1991). Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party. Anderson, 477 U.S. at 248.

III. Discussion

A. Default Judgment Against Bradley

As detailed above, Bradley was served with process, both as the executive director of Integrated and in his personal capacity, on September 4, 2019. See ECF No. 8-9. Nevertheless, Bradley failed to appear or otherwise respond to the plaintiff's allegations. Thereafter, the clerk made an entry of default against Bradley on December 31, 2019. ECF No. 15. Bradley was served with a copy of the default on January 3, 2020. ECF No. 16. Still, Bradley has not made an appearance in this action. Accordingly, Bradley has admitted the well-pled facts of the United States' complaint. See Ryan, 253 F.3d at 780.

First, Bradley, as executive director of Integrated and in his own personal capacity, retained the rent proceeds from the approved lease to Recovery Point. See Compl. ¶¶ 18-19, 49-51. This action violated 45 C.F.R. § 75.307(e)(1), which requires program income to be used for current program costs.

The court is satisfied that the United States has shown that Bradley was not authorized to take the money for personal use. It is evident that Integrated and Bradley did not use the sought-after lease income for program costs. The lease payments in questions were made, at least in part, after the time Integrated and Bradley had ceased operation of their program, in violation of the Deed. See Declaration ¶¶ 10, 12 (noting that HHS was unable to contact Integrated as early as June 2018 and that by the time HHS conducted a site inspection in October 2018, the portion of the Property Integrated was to utilize "was vacant and appeared to be for some time").

Similarly, the Deed itself provides that in the event the grantee leases or uses the property for purposes other than those stated in the first condition subsequent without the consent of the grantor, "all revenues therefrom . . . shall be considered to have been received and held in trust by Grantee for the United States of America and shall be subject to the direction and control of the Grantor . . . ." Deed, at 14. By ceasing operation of their program, Bradley and Integrated violated the first condition and were therefore required to

retain the accrued revenues from the lease to Recovery Point in trust for the United States.[4]

Second, Bradley, as executive director of Integrated, breached the second condition subsequent of the Deed by leasing a portion of the property to Walker without HHS' permission. Compl. ¶ 20.  He then retained those proceeds, in violation of the sixth condition subsequent and 45 C.F.R. § 12.9(c)(4), which requires the transferee to hold in trust benefits received via the unauthorized lease of program property.  Compl. ¶¶ 49-51.

Inasmuch as Bradley has admitted these facts by failing to appear and respond, the United States is entitled to an entry of default judgment.  The complaint, however, does not assert a sum certain against Bradley, and the court finds that damages are best determined upon consideration of the United States' contemporaneously filed motion for summary judgment.

B. <u>Summary Judgment as to Damages</u>

The United States argues that it is entitled to summary judgment on the issue of damages.  Specifically, the

---

[4] This duty is further highlighted by the Deed's fourth condition subsequent which required the grantee to file annual "reports on the operation and maintenance of the property" and to furnish, when requested, "other pertinent data evidencing continuous use of the Property for the purposes specified . . . ."  Deed, at ¶¶ 11-12.

14

United States asks the court to enter a judgment order against Integrated and Bradley granting the United States a total sum of $72,778.00 in damages. These damages represent the $25,200.00 Bradley received from Walker, the $47,500.00 Bradley received in rent payments from Recovery Point, and the $78.00 in expenses HHS incurred when it changed the locks on the property. ECF No. 24, at 10–11; Declaration at ¶¶ 19–23.

With regard to the unauthorized lease to Walker, the government has shown that Bradley, on behalf of Integrated, received $25,200.00 in unauthorized lease payments. Declaration ¶ 19; Accounting Records, at 27-28. Having already found that Bradley, via his default, has admitted that this action violated the Deed, the Court finds that the United States is entitled to recovery of those funds.

Next, concerning the rent payments Bradley received from Recovery Point, the United States submits that although HHS had authorized the lease, Integrated and Bradley were obligated to places those funds "back into the program described in the Deed regarding the Property." ECF No. 24, at 10 (citing 45 C.F.R. § 75.307). Accordingly, the United States maintains that it is entitled to the improperly kept funds. Id. at 10–11.

The United States has shown, via Ritta's declaration and email documentation from Recovery Point's Director of Finance, that Recovery Point paid Integrated and Bradley $47,500 in rent payments between April 2017 and October 2018. Declaration, at ¶ 20; Recovery Point Email, ECF No. 23-1 at 45. Inasmuch as these funds were not used in accordance with the program and its implementing regulations, the court concludes that the United States is entitled to recover them.

Finally, the United States submits that it is entitled to recover the $78.00 it expended having the locks at the property changed in order to obtain full possession of and access to the property. ECF No. 24, at 11. The court agrees. The Deed expressly provides that in the event of reverter, the United States shall be reimbursed for any damage to the property, "including such costs as may be incurred in recovering title to or possession of" the property. Deed, at 14. The United States has provided documentation of the expenses it incurred accessing the property after the court ordered reversion. See Invoice, at 48. Accordingly, the United States is entitled to recoup those damages.

What remains then, is from whom the United States is entitled to obtain which damages. Count IV of the United States' complaint ("Misappropriation of Funds and Breach of

Condition Subsequent") was asserted only against Bradley. Compl. ¶ 49. Accordingly, the court finds that the United States may recover the rents from Recovery Point and Walker from Bradley only. Count III of the complaint ("Costs Because of Breach of Condition Subsequent"), pursuant to which the United States seeks damages "in connection with exercising its rights under the deed," however, is asserted against Integrated. Compl. ¶¶ 44-46. Accordingly, the court finds that the United States may recover the lock removal and re-keying fees from Integrated.

### IV. Conclusion

Accordingly, it is ORDERED that:

1. The United States' motions for default judgment and summary judgment against defendant Roger Bradley (ECF Nos. 21, 23) are GRANTED in the amount of $72.700.00.

2. The United States' motion for summary judgment against defendant Integrated Community Services of Parkersburg, Inc. (ECF No. 23) is GRANTED in the amount of $78.00 and is otherwise denied insofar as the motion seeks monetary relief beyond that sought in the complaint.

**The Clerk is directed to transmit copies of this order to all counsel of record and any unrepresented parties.**

**ENTER:     September 13, 2021**

_____
John T. Copenhaver, Jr.
Senior United States District Judge